IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **Roberta A. McPheeters, individually and on behalf of all others similarly situated**<br>c/o Spangenberg Shibley & Liber LLP<br>1001 Lakeside Avenue East, Suite 1700<br>Cleveland, OH 44114<br><br>Plaintiff<br><br>v.<br><br>**United Services Automobile Association, a Texas Corporation**<br>c/o Corporation Service Company dba<br>CSC-Lawyers Inc., Statutory Agent<br>211 East 7th Street, Suite 620<br>Austin, TX 78701<br><br>Defendant | CASE NO.<br><br>JUDGE<br><br>MAGISTRATE JUDGE<br><br><br><br>**CLASS ACTION COMPLAINT FOR DAMAGES**<br><br>**(Jury Demand Endorsed Hereon*)*** |

Plaintiff, Roberta McPheeters ("Plaintiff"), on behalf of Plaintiff and all others similarly situated, files this Class Action Complaint against United Services Automobile Association ("Defendant" or "USAA"), and in support thereof state the following:

**NATURE OF THE ACTION**

1. This is an Ohio class action lawsuit by Ohio resident Roberta McPheeters, who suffered a total loss on an insured vehicle. Plaintiff was insured under a USAA private passenger auto ("PPA") policy of insurance (the "Policy"). Plaintiff made a covered claim for physical damage. Defendant breached its policy by failing to pay the full sales tax due under the policy.

2. Plaintiff files this lawsuit on behalf of all persons insured under a USAA insurance policy who suffered a total-loss covered claim and were not paid the full sales tax due under their policy.

3. In the Policy, Defendant's standardized policy language promises, upon the occurrence of a covered loss to an insured vehicle, to pay the cost to repair or replace the vehicle (or to directly repair or replace the vehicle).

4. A "total loss" occurs where the cost to repair or replace the vehicle – the loss USAA promises to pay – exceeds the pre-loss actual cash value ("ACV") of the insured vehicle (less the post-loss salvage value). In such cases, USAA's liability is limited to or capped at the pre-loss ACV.

5. Defendant's standardized policy language as to coverage for ACV of total loss vehicles is present in every auto policy issued by Defendant in Ohio during the relevant time period.

6. Sales tax is a mandatory element of the cost to repair or replace damage to a vehicle, including for Plaintiff's total-loss vehicle. If instead of paying the cost to repair or replace the loss to a vehicle, Defendant's liability is limited to the pre-loss ACV of the insured vehicle, such amount would also include sales tax. State law imposes a mandatory state sales tax of 5.75% (plus local sales tax of 0–2%). As such, the Policy includes sales tax (which is a mandatory cost to purchase a vehicle in Ohio) in the ACV total-loss coverage provided by USAA, calculated as the applicable percentage of the adjusted vehicle value ("ACV Sales Tax").

7. Nothing in the Policy conditions payment of sales tax on whether a vehicle is actually repaired or replaced and is thus incurred by the insured. Nothing in the Policy conditions payment of ACV on whether costs, including sales tax, is incurred by the insured.

8. Nevertheless, USAA failed to include ACV Sales Tax in making payment to each member of the Class defined below, thereby breaching its contract with every putative Class Member.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action under 28 U.S.C. § 1332(d)(2) because (a) Plaintiff is a member of the putative class, which consists of at least 100 members; (b) Plaintiff is an Ohio citizen and Defendant is a Texas citizen; and (c) the amount in controversy exceeds the sum of $5 million exclusive of interest and costs.

10. Venue is proper in this Court because a substantial portion of the acts and course of conduct giving rise to the claims alleged occurred within the district and Defendant is subject to personal jurisdiction here.

## PARTIES

11. Roberta McPheeters is and was domiciled in Hamilton County, Ohio, and was an Ohio citizen at all times relevant to this lawsuit.

12. USAA is and was, at all times relevant to this lawsuit, a foreign corporation located in, incorporated in, and with its principal place of business in Texas. USAA transacts insurance in Ohio.

## FACTUAL ALLEGATIONS

13. Plaintiff entered the Policy agreement to be insured by USAA. *See* **Exhibit A**, the form policy, which sets out the Policy terms of coverage for total-loss claims for Plaintiff and all putative class members.

14. The Policy provided physical damage coverage for Plaintiff's 2005 Subaru Baja 4D 4X4 SPT ("Insured Vehicle").

15. On or about November 16, 2016, the Insured Vehicle sustained loss/damage. Subsequently, Plaintiff filed a claim with USAA for the Insured Vehicle physical damage caused by the collision.

16. USAA determined that the Insured Vehicle was a total loss and that the claim was a covered claim.

17. USAA, through a third-party vehicle valuation provider, determined the Insured Vehicle had a base value of $8,213.00. *See* **Exhibit B** at 1 (Valuation Report).

18. USAA then made a condition adjustment and subtracted $1,867.00 from the base value and determined that the adjusted vehicle value was $6,346.00. *Id.* ACV Sales Tax (the applicable percentage of the adjusted vehicle value) was calculated to be $444.22, for a total of $6,790.22. *Id*.

19. Defendant subtracted the deductible of $500.00 and added $4.50 for a transfer fee and $15.00 for a title fee, **but did not include the ACV Sales Tax of $444.22 reflected in the Valuation Report.** Instead, Defendant took the adjusted vehicle value, added the transfer fees and subtracted the deductible, for a total payment of $5,865.50. *See* **Exhibit C** (Settlement Breakdown).

20. The ACV Sales Tax was $444.22 because the applicable sales tax was 7% (5.75% state sales tax and 1.25% local sales tax) and the adjusted value of Plaintiff's Insured Vehicle at the time of the loss was $6,346.00.

21. USAA paid $5,865.50 on Plaintiff's total-loss claim. But this payment did not include the required $444.22 for sales tax.

4

    **A.**    **The Policy Requires USAA to Pay ACV at a Minimum.**

22.    The Policy promises to pay for collision and comprehensive loss. Policy at 16 of 26. Loss is defined as "direct and accidental damage to…or theft of your covered auto." *Id.* at 15 of 26.

23.    Loss is further defined to "not include any damage other than the cost to repair or replace." *Id.* Such loss – the "cost to repair or replace" – includes within it what Defendant terms a "total loss". *Id.*

24.    Defendant explains that the term "total loss" describes the scenario where, in USAA's judgment, the cost to repair the loss ("direct and accidental damage") to the insured vehicle exceeds the vehicle's pre-loss ACV (less its salvage or retained value).

25.    Thus, where "direct and accidental damage" to a vehicle occurs, Defendant promises to pay for such damage, includes only "the cost to repair or replace" the damage. Policy at 15 of 26. Defendant promises to pay for such damage either directly or by paying the cost in money. *Id.* at 18 of 26 (Payment of Loss provision). The cost to repair or replace damage to a vehicle includes sales tax.

26.    Such liability for loss is not limitless, however. While promising to pay to repair or replace the damage to the vehicle, Defendant also caps its liability at the pre-loss ACV of the vehicle. *Id.* at 17 of 26 (Limit on Liability provision). Thus, although USAA promises to pay the cost to repair or replace the loss, if such amount is higher than the pre-loss ACV of the vehicle, USAA is not obligated to pay the (higher) cost to repair or replace the loss. Instead, the Policy permits USAA to pay only the (lesser) ACV amount.

27.    Because a "total-loss" is the term used to describe the situation where the cost to repair or replace the loss (the full amount of potential coverage) exceeds the pre-loss ACV (the

5

limitation on the promised to pay), the Policy further explains that the amount owed in the context of such scenario is the lesser amount, *i.e.*, ACV. *Id.* at 17 of 26.

28. ACV is defined as "the amount that it would cost, at the time of loss, to buy a comparable vehicle. As applied to your covered auto, a comparable vehicle is one of the same make, model, model year, body type, and options with substantially similar mileage and physical condition." Policy at 15 of 26.

29. The "cost…to buy a comparable vehicle" also includes sales tax. USAA promised to pay the cost to repair or replace the loss, which includes sales tax. By limiting its liability to ACV, USAA excluded the full repair or replacement amount, but it did not exclude sales tax, which would still be part of the cost to buy the depreciated vehicle.

30. Where USAA elects to pay in money the cost to repair or replace the damage (or the ACV amount), the Policy contains no language: (1) excluding sales tax; (2) conditioning payment of sales tax (or any other element) for any purpose whatsoever; (3) requiring an insured to obtain a replacement vehicle at all in order to receive payment; or (4) any provision linking the amount of sales tax (or any other element) on the amount (if any) actually spent by the insured on the total-loss vehicle or on any replacement vehicle.

31. The Policy does not condition an insured's receipt of full coverage upon the purchase of a replacement vehicle.

32. The Policy does not condition Defendant's payments of total-loss coverage on an insured's purchase of a replacement vehicle.

33. The Policy provides no notice to an insured that the amount of sales tax coverage provided under the Policy depends on an amount of sales tax actually paid on a replacement

6

vehicle. The Policy does not require insureds to pay sales tax before receiving sales tax coverage related to their vehicle's replacement cost.

34. The Policy does not permit Defendant to determine the *amount* of sales tax coverage after purchase of a replacement vehicle (if any). Instead, the Policy promises ACV sales tax – sales tax based on a comparable vehicle, not some other vehicle an insured may or may not purchase. If an insured purchases a more expensive vehicle, the amount owed is not based on the more expensive vehicle; rather, the amount owed remains the amount it *would* cost to buy a vehicle comparable to the total-loss vehicle. If an insured purchases a less expensive vehicle, the amount owed is not based on the less expensive vehicle; rather, the amount owed remains the amount it *would* cost to buy a vehicle comparable to the total-loss vehicle. If the insured does not purchase a vehicle at all, the amount owed is the same, *i.e.,* the amount it *would* cost to buy a vehicle comparable to the total-loss vehicle.

35. Throughout the class period, Ohio and its local governments imposed sales taxes applicable to the purchase of any private passenger vehicle. These sales taxes are mandatory and apply to the replacement of all total-loss vehicles in Ohio. Ohio Rev. Stat. § 5739.02(A). None of the exceptions in Ohio Rev. Stat. § 5739.02(B) apply to the sale or lease of private-passenger motor vehicles.

36. Plaintiff does not contest or challenge that USAA correctly calculated the amount of loss – the cost to repair or replace the damage to the vehicle – nor that such amount exceeded the pre-loss ACV and thus constituted a total loss. Nor does Plaintiff contest the adjusted vehicle value amount. Instead, Plaintiff alleges only that the Policy includes coverage for sales tax calculated as the applicable percentage of the adjusted vehicle value in the event of a total-loss claim without precondition.

37. Plaintiff paid all premiums owed and otherwise satisfied all conditions precedent such that her insurance policy was in effect and operational at the time of the accident.

## CLASS ALLEGATIONS

38. Plaintiff brings this action seeking representation of a class pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

39. Plaintiff asserts claims for breach of contract on behalf of a class (hereafter the "Class") defined as follows:

> All insureds, under any Ohio policy issued by United Services Automobile Association covering a vehicle with private-passenger automobile physical damage coverage for comprehensive or collision loss who submitted a first-party physical damage claim determined to be a covered total loss within the eight year time period prior to the date on which this lawsuit was filed until the date of any certification order.

40. Excluded from the Class are all officers and employees of USAA and its affiliates, parents, and subsidiaries; all persons who make a timely election to be excluded from the Class; government entities; and the judges to whom this case is assigned and their immediate family and court staff.

41. Every member of the putative Class submitted covered claims where USAA determined that the cost to repair or replace the vehicle exceeded the pre-loss ACV (less salvage value) of the vehicle, and thus that the vehicle was a "total loss."

42. The members of the Class are ascertainable and readily identifiable from information and records in USAA's custody, possession, or control.

43. **Numerosity:** Although the precise number of class members is unknown to Plaintiff at this time and can only be determined through appropriate discovery, Plaintiff believes that because Defendant is one of the largest motor vehicle insurers in the State of Ohio and writes

hundreds of millions of dollars of private-passenger physical damage coverage premiums, the classes of persons affected by Defendant's unlawful practice consists of thousands of individuals or the class of persons affected are otherwise so numerous that joinder of all class members is impractical. The unlawful practice alleged herein is a standardized and uniform practice, employed by Defendant pursuant to standardized insurance policy language, and results in the retention by Defendant of insurance benefits and monies properly owed to Plaintiff and the class members. Thus, numerosity as to both classes is established.

44. **Commonality:** Plaintiff's claims raise questions of law and fact common to all members of the class, within the meaning of FRCP 23(a)(2), including (a) whether, under the Defendant's standardized policy language, Plaintiff and the class members are owed ACV Sales Tax upon the total loss of an insured vehicle without precondition; and (b) whether Defendant breached its insurance contracts with the Plaintiff and the class members by failing to pay ACV Sales Tax to members of Class who suffered a total loss to the insured vehicle.

45. **Typicality:** Plaintiff's claims are typical of the claims of all other members of the Class within the meaning of Rule 23(a)(3) because all such claims arise from the allegedly improper failure by Defendant to include sales tax in making payment upon the total loss of insured vehicles. The material and relevant policy terms for each class member are substantially identical to the terms of Plaintiff's policies. Plaintiff's claim is based on the same legal theories as those of the Class and is subject to the same defenses, meritorious or not.

46. **Adequacy:** Plaintiff and Plaintiff's counsel will fairly and adequately protect and represent the interests of each member of the class within the meaning of Rule 23(a)(4). Plaintiff is committed to the vigorous prosecution of this action and retained competent counsel experienced in prosecuting and defending class actions. Plaintiff's counsel has successfully litigated other class

action cases similar to that here, where insurers breached contracts with insureds by failing to include sales tax after total losses.

47. **Predominance:** Pursuant to Rule 23(b)(3), the previously articulated common issues of fact and law predominate over any question solely affecting individual Class Members. Any differences in damages as to Class Members is a function of the underlying vehicle value, but the measure of damages is the same, the calculation of which is a ministerial function. Moreover, there are no individual issues as to liability precluding a finding of predominance, as the claims are premised on substantively identical Policy language.

48. **Superiority:** Class treatment is superior to any other available methods for a fair and efficient adjudication of the controversy within the meaning of Rule 23(b)(3) because, among other reasons, it is desirable to concentrate the litigation of the Class Members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. Furthermore, because the damages suffered by individual Class Members is relatively small, their interests in maintaining separate actions is questionable and the expense and burden of individual litigation makes it impracticable for Class Members to seek individual redress for the wrongs done to them. Plaintiff knows of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

## BREACH OF CONTRACT

49. The allegations in Paragraphs 1 through 48 are hereby incorporated by reference.

50. Plaintiff and the Class Members were insured under contracts with USAA and performed all requirements under it. Ohio law governs the policies at issue as to each and every member of the Class, including Plaintiff.

51. Plaintiff and every member of the Class made a claim under her policy that Defendant determined to be a first-party total-loss covered claim.

52. Pursuant to the terms of the Policy, Defendant was obligated to pay Plaintiff and the Class Members sales tax calculated as the applicable percentage of the vehicles' adjusted vehicle value.

53. Defendant failed to pay such amount in Sales Tax to Plaintiff and each and every member of the Class.

54. The aforementioned failure constituted a breach of the material terms of the contracts.

55. As a result thereof, Plaintiff and the Class suffered damages and are entitled, under the Policy, to sums representing the sales tax owed (less any amount in sales tax already paid), prejudgment and postjudgment interest, attorneys' fees, and all costs and expenses of litigation.

56. Plaintiff and the Class Members are entitled to an award of attorneys' fees and costs under Ohio law and all contractual and statutory provisions allowing for recovery of attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the class, demands a trial by jury on all triable issues and seek judgment as follows:

    a) An order certifying this action as a class action on behalf of the class and appointing Plaintiff as Class Representative and the undersigned as Class Counsel;

    b) For an award of compensatory damages in amounts owed under the Policy;

    c) For all other damages according to proof;

    d)    For an award of attorneys' fees and expenses as appropriate;

    e)    For costs of suit incurred herein;

    f)    For pre- and post-judgment interests on any amounts awarded; and

    g)    For other and further forms of relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

Dated: May 22, 2020

Respectfully submitted,

/s/ Stuart E. Scott
**SPANGENBERG SHIBLEY & LIBER LLP**
STUART E. SCOTT (0064834)
sscott@spanglaw.com
KEVIN C. HULICK (0093921)
khulick@spanglaw.com
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH  44114
Telephone: (216) 696-3232
Facsimile: (216) 696-3924

**EDELSBERG LAW, PA**
Scott Edelsberg, Esq. *(pro hac vice to be filed)*
scott@edelsberglaw.com
20900 NE 30th Avenue, Suite 417
Aventura, FL  33180
Telephone: (305) 975-3320

**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis *(pro hac vice to be filed)*
efilings@shamisgentile.com
14 NE 1st Avenue, Suite 705
Miami, FL  33132
Telephone: (305) 479-2299
Facsimile: (786) 623-0915

**DAPEER LAW, P.A.**
Rachel Dapeer *(pro hac vice to be filed)*
rachel@dapeer.com
300 South Biscayne Boulevard, Suite 2704
Miami, FL 33131
Telephone: (305) 610-5223

**NORMAND PLLC**
Edmund A. Normand *(pro hac vice to be filed)*
ed@ednormand.com
Jacob L. Phillips *(pro hac vice to be filed)*
jacob.phillips@normandpllc.com
P.O. Box 1400036
Orlando, FL 32814-0036
Telephone: (407) 603-6031

*Attorneys for Plaintiff and the Class*