# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

ROBERTA A. MCPHEETERS, *et al.*,     :     Case No. 1:20-cv-414
*individually and on behalf of all others*     :
*similarly situated*     :     Judge Timothy S. Black
    :
       Plaintiffs,     :
    :
vs.     :
    :
UNITED SERVICES AUTOMOBILE     :
ASSOCIATION, *et al.*,     :
    :
       Defendants.     :

## ORDER:
### (1) DENYING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS (DOC. 32);
### (2) DENYING DEFENDANTS' MOTION TO CERTIFY A QUESTION OF CONTROLLING LAW (DOC. 32);
### (3) DENYING AS MOOT DEFENDANTS' MOTION TO STAY DISCOVERY (DOC. 32); AND
### (4) GRANTING IN PART DEFENDANTS' MOTION TO SEAL (DOC. 41)

This civil case is before the Court on Defendants United Services Automobile

Association, Garrison Property and Casualty Insurance Company, and USAA Casualty

Insurance Company (collectively, "USAA")'s motion for judgment on the pleadings, or,

alternatively, to certify a controlling question of law to the Supreme Court of Ohio, and

motion to stay discovery (Doc. 32), the parties' responsive memoranda (Docs. 50, 42),

USAA's notice of supplemental authority (Doc. 48), and Plaintiffs' response to the

supplemental authority. (Doc. 49) Also before the Court is USAA's motion to seal

(Doc. 41), and the parties' responsive memoranda and supporting documents (Docs. 42,

43, 45, 46, 47).[1]

# I. BACKGROUND

## A. Relevant Facts

The relevant facts of this case are not significantly in dispute. Plaintiffs

("Plaintiffs"), all Ohio residents, held auto insurance policies with Defendant insurer

USAA. (Doc. 30 at ¶2). Plaintiffs sustained damage to their vehicles and submitted

claims. (*Id.* at ¶1). USAA declared Plaintiffs' vehicles "total losses" because, in each

case, the cost to repair the vehicle exceeded its pre-accident values minus its worth as

salvage. (*Id.* at ¶¶ 2, 4). For the purposes of this motion, the Court assumes Plaintiffs

submitted these claims without having first purchased replacement vehicles. In any case,

in settlement of the claims, USAA did not compensate Plaintiffs for the cost of sales tax

on replacement vehicles. (*Id.* at 60).

Plaintiffs filed suit, seeking damages for the alleged breach of the insurance

contract, on behalf of themselves and those similarly situated.[2]

---

[1] USAA moved to seal Plaintiffs' opposition to USAA's motion for judgment on the pleadings. (Doc. 41). This Court granted USAA the opportunity to file a motion to seal after Plaintiffs failed to provide timely notice that Plaintiffs intended to file documents pursuant to the protective order. (*See* 2/4/2021 Notation Order). USAA requested an extension of time to file its motion (Doc. 40), and the Court **GRANTS** that motion (Doc. 40). The 2/4/2021 Notation Order provided Plaintiffs the opportunity to oppose the motion to seal; it did not set a deadline for a reply in support. USAA moved for leave to file a reply in support of that motion to seal (Doc. 46), attaching its reply. The Court **GRANTS** that motion (Doc. 46) and will consider USAA's reply. The Court will also consider Plaintiff's response in opposition to the motion to file a reply.

[2] No class has been certified at this point. At present, the Court will consider the insurance policies of the lead Plaintiffs. USAA admits, apparently for the purposes of this motion only, that the applicable language in Plaintiffs' policies is identical. (Doc. 32 at 11)(n.7).

USAA has now moved for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c); alternatively, to certify a question to the Ohio state Supreme Court; and for other relief. (Doc. 32). USAA moves for judgment on the pleadings on the basis that USAA has no obligation under the terms of the policy to compensate Plaintiffs for sales tax on replacement vehicles the Plaintiffs have not yet purchased. (*Id.*)

**B. "Loss" and "Actual Cash Value" as used in the policy**

The auto insurance policy contains two sections that frame the issues in this case: a coverage provision centered on the term "loss" … and a limit of liability section that invokes "actual cash value" ("ACV").

Coverage for "loss" is described as as follows:

*"We will pay for loss caused by collision to your covered auto, including its equipment, and personal property contained in your covered auto, minus any applicable deductible shown on the Declarations."* (Doc. 30-1, PageID# 876).

In turn, the policy defines "loss" as:

*"direct and accidental damage to the operational safety, function, or appearance of, or theft of, your covered auto or personal property contained in your covered auto. Loss includes a total loss, but does not include any damage other than the cost to repair or replace*." (*Id.*, PageID #875).

The limit of liability section employs markedly different language. In relevant part, it states:

*LIMIT OF LIABILITY*

*A. Total loss to your covered auto. Our limit of liability under Comprehensive Coverage and Collision Coverage is the actual cash value of the vehicle, inclusive of any custom equipment.*

> *[...]*
>
> *2. We will declare your covered auto to be a total loss if, in our judgment, the cost to repair it would be greater than its actual cash value minus its salvage value after the loss. (Id., PageID #877).*

The policy also defines ACV. In relevant part, ACV is "the amount that it would cost, at the time of loss, to buy a comparable vehicle…." (*Id.*, PageID# 875).

## II.  MOTION FOR JUDGMENT ON THE PLEADINGS

### A.    Standard of Review

The standard of review for a Rule 12(c) motion is the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).  "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id*. (citing *JPMorgan Chase Bank v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)).  That is, a court should grant a motion for judgment on the pleadings under Rule 12(c) only if "no material issue of fact

exists and the party making the motion is entitled to judgment as a matter of law." *Winget*, 510 F.3d at 582 (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)).

To show grounds for relief, Federal Rule of Civil Procedure 8(a) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The Rule "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (citing *Twombly*, 550 U.S. at 555). In fact, in determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265 (1986)). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Id*.

Accordingly, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. A claim is plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,' "
and the case shall be dismissed. *Id*.

**B.    Analysis**

USAA argues, as a matter of law, that the insurance policy does not provide
insureds with compensation for sales tax on as-yet unpurchased replacement vehicles.
The Court discerns three broad points of contention: 1) the policy's coverage for "loss";
2) the import of "limit of liability" and "ACV"; and 3) the effect of Ohio insurance
regulations on the obligations laid out in the policy. Before analyzing these in turn, the
Court must address three preliminary issues.

The first regards the unique burden placed on the insurer under Ohio law when it
comes to interpreting a disputed insurance contract.  Specifically, "[w]here provisions of
a contract of insurance are reasonably susceptible of more than one interpretation, they
will be construed strictly against the insurer and liberally in favor of the insured."
*Ostendorf v. Grange Indem. Ins. Co.*, No. 2:19-CV-1147, 2020 WL 134169, at *3 (S.D.
Ohio 2020).  Thus, to show entitlement to judgment , USAA "must establish not merely
that the policy is capable of the construction it favors, but rather that such an
interpretation is the only one that can fairly be placed on the language in question."
*Andersen v. Highland House Co.*, 2001-Ohio-1607, 757 N.E.2d 329, 332 (Ohio Sup. Ct.
2001).

Second, courts applying Ohio law take different approaches as to how to resolve
facially ambiguous language on a motion directed to the pleadings. Some have found that
"[w]here a plaintiff's claim is predicated upon a written instrument attached to the

complaint, a … dismissal is proper only where the language of the writing is clear and unambiguous and presents an insuperable bar to relief." *Struckman v. Bd. of Educ. of Teays Valley Loc. Sch. Dist.*, 2017-Ohio-1177, ¶ 2 (quoting *Demeraski v. Bailey,* 2015–Ohio–2162, 35 N.E.3d 913, ¶ 13 (8th Dist.)). However, as acknowledged recently by the 6th Circuit on an appeal of a motion to dismiss, "if … the contract is facially ambiguous, the court may resort to evidence outside the contract to determine its meaning." *Wilkerson v. Am. Fam. Ins. Co.*, 997 F.3d 666 (6th Cir. May 13, 2021).[3]

But "may" is not must and the Court finds, in this case, it is sensible at this stage to limit its inquiry to the four corners of the policy as interpreted through the applicable law. Thus, the Court will not consider the parties' arguments about insurance industry custom, evidence of relevant terms' use in extrinsic tribunals, and alleged communications made by USAA about the substance of the coverage.

Third, clarifications are necessary on ripeness of the motion and the resolution of ambiguity. As noted, a court may interpret a contract, such as an insurance policy, as a "matter of law." *Potti v. Duramed Pharms., Inc.*, 938 F.2d 641, 647 (6th Cir. 1991). Thus, USAA's 12(c) motion is not "pre-mature," as Plaintiffs state, simply because "development of the record"—ostensibly through discovery—could further "illuminate the meaning of the language in question." (Doc. 50 at 10). Again, though, USAA does have a significant burden. To prevail at this stage, USAA must foreclose the possibility of

---

[3] *Wilkerson*, which is discussed more in-depth *supra,* was decided at the appellate level after the briefing in this case closed. The parties have had ample time to notice the supplemental authority to the court. Neither has done so.  USAA does rely on the district court decision in the same case. (Doc. 32 at 8).

ambiguity by showing its interpretation is "the only one that can fairly be placed on the language in question." *Andersen*, 757 N.E.2d at 332 (Ohio Sup. Ct. 2001). For that reason, this Court must reject USAA's assertion that the language in-question cannot be ambiguous simply because Plaintiff has stated that it is "absolutely clear." (Doc. 42 at 4). As the 6th Circuit has advised, "[I]f the reading favoring the insured is a reasonable way to resolve any ambiguity, the court generally must adopt that reading ...." 997 F.3d at 666 (2021).

Given the undisputed factual allegations in this case, Plaintiffs will survive this motion if they proffer a reasonable interpretation that the policy includes coverage for un-incurred sales tax on a replacement car. With that in mind, the Court now turns to the points of contention on the merits.

1. **Coverage for "Loss"**

At a surface level, the parties disagree about whether "loss" or "ACV" is the operative term in the policy.

USAA argues that "loss" alone determines the extent of its coverage obligations. (Doc. 32 at 15). Per the relevant section, "[l]oss means 'direct and accidental damages' to the "covered auto." (*Id.*). USAA states the policy permits it to pay for loss "in money," or to settle the claim by repairing or replacing the damaged property. (*Id.*). USAA's ultimate contention is that "Plaintiffs did not suffer a loss under the policy with respect to unpaid taxes." (*Id.*)

Initially, the Court notes that while USAA accurately quotes the full definition of "loss," USAA avoids any serious consideration of the word "replace." (*Id.*). While the

first sentence in the definition of "loss" defines it as "direct and accidental damage," the second sentence, as quoted by USAA, clarifies that "[l]oss includes a total loss, but does not include any damage *other than the cost to repair or replace*." (*Id.*) (emphasis added). A plain reading of this definition does not support USAA's allegation that "loss," as used in the contract, <u>only</u> includes "direct and accidental damage" along those narrow terms. While the definition is circuitous, it seems clear, by implication, that "loss" may incorporate "cost to repair or replace."

And the "cost to…replace" language is indeed meaningful in this context. Looking at similar auto insurance contracts, courts applying Ohio law have interpreted "replacement" costs to include expenses on a new car, including unpaid sales tax. In *Desai v. GEICO*, the court found that, absent further definition, "replacement cost" was "ambiguous," and thus, at the motion to dismiss stage, the term was reasonably interpreted to include expenses on a replacement car." [4] 478 F. Supp. 3d 609, 615 (N.D. Ohio 2020); *See also*, *Davis v. GEICO Cas. Co.*, 2020 WL 68573, at *6, n.4, (S.D. Ohio Jan. 7, 2020) ("[the insurer] chose to define ACV as "replacement cost" which clearly includes all costs associated with replacement.").

---

[4] While *Desai* concerns title and registration costs, not taxes, it ultimately speaks to "whether replacement includes the fees at issue." *Desai v. Geico Cas. Co.*, No. 1:19-CV-2327, 2021 WL 2069546, at *6 (N.D. Ohio May 24, 2021). *Desai* considerers a similarly structured policy that includes both a coverage-provision section and a limit of liability section. *Id.* The policy in *Desai* also defines loss with reference to "replacement." *Id.* This Court sees no reason to draw a distinction between the taxes sought here and the fees associated with replacement sought in *Desai*.

The 6th Circuit's decision in *Wilkerson v. American Family Insurance* embraces

the idea that "replacement" value includes the sales tax:

> "The phrase "actual cash value" in this insurance setting also can
> mean "replacement cost minus normal depreciation" for the damaged car.
> *Black's Law Dictionary*, *supra*, at 1784. Some state courts (such as Florida)
> have adopted this replacement-cost-minus-depreciation definition as their default
> rule …. And if "actual cash value" in American Family's policy adopted this
> idiosyncratic definition, the *policy might well include the taxes and fees that
> Wilkerson seeks because those expenses are likely part of the typical "replacement
> costs*."

997 F.3d at 670 (6th Cir. 2021) (emphasis added).

Although the *Wilkerson* court affirmed that the policy before it did not cover taxes

on a replacement vehicle, the case is nonetheless instructive both in its approach and as a

factual comparison to the present dispute. In *Wilkerson*, the operative terms of coverage

were left undefined. *Id*. Reading the whole policy, the 6th Circuit determined that the the

policy before it provided "market" rather than "replacement" value on total loss claims.

*Id* at 671. But, per above, the *Wilkerson* court anticipated that insurance coverage pegged

to "replacement cost" "might well include taxes and fees…." *Id* at 670. Unlike the policy

in *Wilkerson*, the policy here does tie "loss" coverage to the cost "to replace." (Doc. 30-

1). So in this case, because "loss" contemplates, in some form, "cost … to replace,"

Plaintiffs' interpretation that coverage for "loss" includes payment for sales tax on a

replacement car is at least reasonable. *See Ostendorf*, No. 2:19-CV-1147, 2020 WL

134169, at *3 (S.D. Ohio Jan. 13, 2020).

USAA, for its part, makes no real attempt to explain away the policy's invocation

of replacement value. Instead, USAA offers more askew arguments. First, USAA claims

Plaintiffs have raised a new argument about "loss." (Doc. 42 at 5). Specifically, USAA says Plaintiffs, for the first time in opposition to the present motion, argue that "loss" coverage, separate and apart from ACV, entitles them to sales tax on replacement vehicles. (*Id.*).

On this point, USAA is simply incorrect. In the fourth amended complaint, Plaintiffs not only allege that "loss" coverage entitles them to sales tax but cite directly to the "loss" section of the policy. (Doc. 30 at ¶49) ( "[W]here 'direct and accidental damage' to a vehicle occurs, Defendants promise to pay the cost to repair or replace the damage. Policy at 15 of 26 …. The cost to repair or replace damage to a vehicle includes sales tax."). It is true that Plaintiffs also claim entitlement to the sales tax under the "|limit of liability" section and its reference to ACV. Nevertheless, Plaintiffs are within their rights to plead that either section imposes the sales tax obligation on USAA. Accordingly, USAA is incorrect that Plaintiffs failed to plead a cause of action, or that Plaintiffs newly raise an argument predicated on the "loss" language of the policy.

USAA also alleges that its election to cover the loss in "money" rather than other options available to it, like "repair or replace," absolves it of responsibility of the "cost to replace." (Doc 42 at 5). USAA's argument is that a disjunctive "or" joins the relevant settlement options — "money," "repair" or "replace." *(Id.)* However, this argument does not hold up to careful scrutiny. There is no dispute that the policy allows USAA to repair or replace a vehicle — or to settle claims through payment of "money." Of course, had USAA repaired or replaced Plaintiffs' vehicles, there would be no dispute over sales tax.

But USAA provided money to settle the claims. The question, then, is <u>how much money</u>, under the provisions of the policy, adequately cover the "loss."

The Court has already addressed the question sufficiently for present purposes. In summary, because the policy defines "loss" with reference to the cost "to … replace," Plaintiffs put forth a reasonable interpretation of the policy — which is not to say a conclusive one — that would obligate USAA to pay sales tax on replacement cars.

Thus, even with its focus narrowed to the "loss" language of the policy, the Court is not persuaded that the policy definitively excludes compensation for sales tax to settle total loss claims.

### 2. Limits of Liability and ACV

The policy defines ACV as the "cost to buy a comparable vehicle." (Doc. 30-1). If ACV is the value due the insured for a total loss claim, Plaintiffs have a stronger justification that sales tax on a replacement car must be included in total loss settlements. This is because, intuitively, sales tax is a necessary "cost to buy" any replacement car.

Because ACV is referenced in a section of the policy titled "limit of liability," Defendants argue that ACV is a limitation on USAA's liability and not "[USAA's] payment obligation." (Doc. 32 at 15). USAA alleges coverage cannot be expanded through a "limitation." (*Id.* at 16). On the other hand, Plaintiffs argue that ACV, by design, is the value returned to the insured when a vehicle is declared a "total loss." (Doc. 50 at 12).

The Court finds the language in question may fairly bear both interpretations. While the section is styled as "limit," the text and the structure of the policy as a whole

do not foreclose Plaintiffs' interpretation that ACV is the value returned to an insured when the car is a total loss. The "limit of liability" section begins with a sentence fragment: "Total loss to your covered auto*."* (Doc. 30-1; PageID# 877). From there it continues, *"*[o]ur limit of liability is the… the [ACV] of the vehicle…." (*Id.*) The policy seems to invite a connection between "total loss," which is also referenced in the section defining "loss," and ACV. It seems at least reasonable that ACV is the measure of coverage regarding, as the policy puts it, the "total loss to your covered auto." (*Id.*).

Just as importantly, courts interpreting similar insurance policies under Ohio law have assumed or implied that the term "actual cash value" may define a policy's <u>coverage</u> even if it is used in a <u>limitations</u> section. *See*, *Wilkerson*, 997 F.3d at 668 (6th Cir. May 13, 2021) (analyzing a policy where ACV appears in a limit of liability section and stating that "[t]his appeal thus turns on whether the phrase actual cash value of the stolen or damaged property in American Family's insurance policy unambiguously excludes the taxes and fees typically incurred to buy replacement property."); *Ostendorf*, 2020 WL 134169, at *2 (S.D. Ohio 2020) (finding ACV ambiguous and thus may include taxes where "limit of liability" was lesser of ACV or amount necessary to repair or replace).

While these cases arrive at different conclusions on the ultimate issue, depending on the definition of ACV in the respective policies, they all look to ACV in a "limits" section to determine if the coverage reasonably includes sales tax on a total loss vehicle. Following the lead of other courts interpreting Ohio law, this Court finds the "limit of liability" plausibly explains <u>both</u> the limit of liability <u>and</u> the procedure for compensating

the insured with ACV, including sales tax, when the covered vehicle is a total loss. *See, e.g.*, *Ostendorf*, 2020 WL 134169.

USAA makes little attempt to distinguish the Ohio cases suggesting that ACV in a limits section may signal the coverage applicable to a total loss. Instead, USAA seeks support in two cases from the 7th Circuit arising out of Illinois law. *See Sigler v. GEICO Cas. Co.,* 967 F.3d 658 (7th Cir. 2020); *Coleman v. Garrison Prop. & Cas. Ins. Co.*, 839 F. App'x 20 (7th Cir. 2021)[5]. The reasoning of *Sigler* and *Coleman* indeed align with USAA's argument that ACV, as used in a "limits" section of a policy is a "ceiling," disconnected from any affirmative coverage obligations. *See e.g.*, *Sigler* 967 F.3d at 660 (7th Cir. 2020). *Coleman*, furthermore, appears to address an insurance policy identical to the policy in this case. 839 F. App'x 20 (7th Cir. 2021).

But neither *Sigler* nor *Coleman* apply Ohio law. As the *Desai* court explained on a motion to reconsider following the 7th Circuit's order, "*Sigler* interpreted an insurance policy under the law of a different State, and local insurance regulations specifically guided the *Sigler* Court. Accordingly, it has limited persuasive authority here." *Desai*, No. 1:19-CV-2327, 2021 WL 2069546, at *5 (N.D. Ohio May 24, 2021) (internal citations omitted).[6] The same is true for the since-decided *Coleman*. 839 F. App'x 20 (7th Cir. 2021). Courts applying Ohio law, on the other hand, have not adopted the reasoning

---

[5] This authority was brought to the Court's attention by USAA's "Notice of Supplemental Authority. (Doc. 48).

[6] Like *Wilkerson*, the *Desai* order was handed down after briefing in this case closed and yet the Court did not receive a notice of supplemental authority.

that ACV, even when it sits in a "limits section," says nothing about coverage obligations.

On its own, USAA's rationale that a "limitation" should be held distinct from the "coverage" is not necessarily unreasonable. (Doc. 32 at 15). <u>For USAA to prevail at this stage, though, it must demonstrate its "interpretation is the only one that can fairly be placed on the language in question."</u> *Andersen v. Highland House Co.*, 2001-Ohio-1607, 757 N.E.2d 329, 332 (Ohio Sup. Ct. 2001) (emphasis added). USAA does not carry that burden. Among other issues, USAA fails to explain why other courts applying Ohio law have looked to "limit(s) of liability" sections to determine coverage for a total loss vehicle. *See e.g.*, *Wilkseron* 997 F.3d at 670.

Accordingly, Plaintiff's argument that ACV is the measure of coverage when a vehicle is a total loss is at least reasonable. Because ACV is defined as the cost "to buy a comparable vehicle," it is likewise a reasonable interpretation that the policy covers the value of sales tax on replacement vehicles.

Whether the operative language is in the "loss" coverage or "ACV," the policy can be reasonably read to obligate USAA to pay Plaintiffs' tax costs on a replacement vehicle.

### 3. Ohio Insurance Regulations and "Un-incurred" Taxes

USAA argues that Ohio insurance regulations do not require an insurer to pay for sales tax on a replacement vehicle until the insured actually buys one. Ohio Admin. Code §§ 3901-1-54(H)(7)(f). USAA states this regulation is "incorporated" into all insurance policies. (Doc. 32 at 21). Thus, USAA concludes, the regulation, as incorporated into the

policy, means USAA is not required to recompense Plaintiffs for taxes until Plaintiffs have purchased replacement vehicles.

The Court does not dispute that Ohio regulations are incorporated into contracts formed in Ohio. But USAA fails to make a compelling argument that these regulations are incorporated as a pre-emptive ceiling rather than a "statutory floor." *Ostendorf*, 2020 WL 134169 at *3. As Plaintiffs point out, the prefatory section of the same regulations states that "the purpose of this rule is to set forth uniform minimum standards…." (Doc. 50 at 24 (citing Ohio Admin. Code §§ 3901-1-54(A)). And courts have agreed that "insurers may also provide coverage that exceeds the requirements of the statute." *See Ostendorf*, 2020 WL 134169, at *3. Here, USAA points to no language in the policy suggesting the coverage extends only as far as the minimum statutory requirements.

Furthermore, courts applying Ohio law have found "preconditions must be expressly stated in an insurance policy." *Davis v. GEICO Cas. Co.*, No. 2:19-CV-2477, 2020 WL 68573, at *6 (S.D. Ohio Jan. 7, 2020). Here, as in *Davis*, the policy "contains no express pre-condition requiring insureds to first replace their total-loss vehicle to establish entitlement to coverage for sales tax." *Id.* Following the guidance of the two cases applying Ohio law to the question, the Court will not interpret the policy to condition compensation for sales tax on purchase of the replacement vehicle. *Ostendorf*, 2020 WL 134169, at *3; *Davis*, 2020 WL 68573, at *6.

The Ohio insurance regulations provide only a statutory floor. The policy in-question includes no pre-conditions requiring purchase of a new car before the insured is entitled to receive the value of sales tax. For these reasons, USAA's argument fails.

To be clear, the Court finds that the policy's language and structure neither definitively provide coverage for unpaid sales tax nor definitively exclude it. However, Plaintiffs put forth sufficient factual allegations, and a reasonable interpretation of the insurance policy, that, taken together, would entitle them to relief they ultimately seek. Accordingly, Plaintiffs have "state[d] a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. USAA, therefore, is not entitled to judgment on the pleadings. Fed. R. Civ. P. 12 (c).

### III.  MOTION TO CERTIFY QUESTION

The Court next considers USAA's alternative request to certify a question to the Supreme Court of Ohio. USAA requests that, pursuant to Supreme Court of Ohio Rule of Practice 9.01, this Court certify the following question:

> Where an Ohio private passenger automobile insurance policy provides for payment of loss to a covered auto up to the limit of liability, and where "actual cash value" of the damaged property is a measure of the limit of liability, must the insurer pay for sales tax when the auto is determined to be a total loss, even though the insured has not complied with Ohio Adm. Code § 3901-1-54(H)(7)(f)?

(Doc. 32 at 9).

### A.    Standard of Review

Federal courts are authorized to certify questions to a state supreme court. *Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009). The Supreme Court of Ohio may answer questions of Ohio law certified to it by federal courts as set forth in the following Rule of Practice:

> The Supreme Court may answer a question of law certified to it by a court of the United States. This rule is invoked if the certifying court, in a proceeding before it, issues a certification order finding there is a question of Ohio law that may be determinative of the proceeding and for which there is no controlling precedent in the decisions of this Supreme Court.

S.Ct.Prac.R. 9.01(A).

Whether to certify a question to a state supreme court is within the sound discretion of a district court. *Transamerica Ins. Co. v. Duro Bag Mfg. Co.*, 50 F.3d 370, 372 (6th Cir. 1995) (citing *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974)). Mere "difficulty in ascertaining local law provides an insufficient basis for certification." *Duryee v. U.S. Dep't of the Treasury*, 6 F.Supp.2d 700, 704 (S.D. Ohio 1995) (citing *Transcontinental Gas Pipeline Corp. v. Transportation Ins. Co.*, 958 F.2d 622 (5th Cir. 1992)). If a court "believes it can resolve an issue of state law with available research materials already at hand, and makes the effort to do so," certification is unwarranted. *Drown v. Wells Fargo Bank, NA*, No. 2:10–CV–00272, 2010 WL 4939963, at *1 (S.D. Ohio Nov. 30, 2010) (citing *Lehman Bros.*, 416 U.S. at 395 (Rehnquist, J., concurring)). "[F]ederal courts generally 'will not trouble our sister state courts. …When we see a reasonably clear and principled course, we will seek to follow it ourselves.'" *Pennington*, 553 F.3d at 450 (quoting *Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007)).

"[U]se of the certification procedure is most appropriate when the question of state law is new or state law is unsettled." *Transamerica Ins. Co.*, 50 F.3d at 372. "Novel or unsettled questions of state law may be appropriate for certification where certification will save time, energy and resources, or where there are conflicting federal interpretations

of an important state law question which would otherwise evade state court review." *Metz v. Unizan Bank,* No. 5:05 CV 1510, 2006 WL 8427066, at \*4 (N.D. Ohio Feb. 28, 2006) (N.D. Ohio 2006) (citing *Arizonans for Official English v. Arizona*, 520 U.S. 43, 77, (1997)); see also *Geib v. Amoco Oil Co.*, 29 F.3d 1050, 1060 (6th Cir. 1994)).

### B. Analysis

Defendant argues certification would dispose of the instant action and others like it (Doc. 32 at 25, 26). For that reason, Defendant states, certification would conserve judicial resources. (*Id*. at 27). In support of that point, USAA highlights evidence that the law is unsettled and in conflict. (*Id.* at 25, 26.) USAA also presents an argument that certification would preserve judicial comity between state and federal courts. (*Id.* at 27). On the other hand, a federal court that wrongly interpreted state law on the question would cause confusion. (*Id.*)

USAA's claim that certification would promote judicial efficiency is too speculative. USAA presents the certification question — to paraphrase, must insurers pay insureds for un-incurred sales tax on total loss vehicles where ACV is the limit — as if it can be answered without examining the individual insurance contracts. Courts sitting in judgment of Ohio law, on the other hand, have resolved cases like this one by looking at the text and structure of individual policies. *See*, *e.g.*, *Wilkerson*, 997 F.3d 666 (6th Cir. May 13, 2021). Unsurprisingly, the outcomes in these cases turn on policy-specific definitions or lack thereof. *Id.* It is not clear that an answer to the certified question would broadly resolve the issue in this case or other class actions with the same general subject

matter.[7] Thus, Defendant's argument that certification would conserve judicial resources is tenuous and not well-taken.

The Court also disagrees that the law is in conflict. *See Transamerica Ins. Co.*, 50 F.3d at 372. USAA states that Ohio courts have "all ruled an insurer need not pay sales tax … for total loss vehicles," as has one federal court. (Doc. 32 at 26). Meanwhile, USAA reports, three Ohio federal courts have "reached the opposite conclusion." (*Id.*). For USAA, the implication is that the Ohio state supreme court must settle this apparent split.

But again, USAA papers over the fact that the cases evidencing an alleged split involved different insurance policies. In the state court cases finding the policies excluded sales tax, the text of the policies defined ACV with reference to "fair market value." *Williams-Diggins v. Permanent Gen. Assurance Corp.*, 2020-Ohio-3973, ¶ 13, 157 N.E.3d 220, 225 (8th Dist.); *Hines v. Victoria Fire & Cas. Co.*, 19CV001233 (Lake Cty Common Pleas Feb. 4 2020). In *Desai* and in this case, the policies contemplate "replacement" costs, or the cost to "buy" a comparable vehicle, and are thus reasonably interpreted, at the point of testing the pleadings, to provide the insured with un-incurred expenses on a new car. *Desai,* 478 F. Supp. 3d 609 (N.D. Ohio 2020). At least for cases like this one, where the insurance policy adopts either replacement value or fair market

_____

[7] The Court acknowledges that the Supreme Court of Ohio could dispose of many of the referenced cases if it decided on the basis that Ohio insurance regulations condition the insurer's payment of sales tax upon the insured's purchase of a replacement vehicle *in all cases*. The Court also notes, however, that no court sitting in judgment of Ohio law, whether state or federal, has adopted that position.

value as the measure of loss, the cases applying Ohio law are not in conflict. Accordingly, on the specific issue put forward in this case, the Court cannot agree that the law is unsettled.

Finally, in its argument regarding comity, Defendant offers generalized concerns about "cooperative judicial federalism," "sovereignty, and "friction-generating error" that could crop up if this federal court wrongly forecasted state law. (Doc. 32 at 24-25). It is worth nothing that most the certification cases cited by Defendant in support of this point involve a *Pullman* problem — risk of a premature adjudication of a federal *constitutional* issue where a "definitive ruling on the state issue would terminate the controversy." *R.R. Comm'n of Tex. v. Pullman Co*., 312 U.S. 496, 498 (1941)[8].  For example, *Arbino v. Johnson & Johnson,* certified a question about the constitutionality of a recently enacted Ohio statute.  Similarly, in *Planned Parenthood v. Strickland*, the 6th Circuit found that certifying a question regarding a constitutional challenge to a new Ohio law "might avoid in whole or in part the necessity for federal constitutional adjudication." 531 F.3d 406, 410–11 (6th Cir. 2008).

Here, there are no constitutional issues and little risk of premature federal adjudication.  Rather, this case involves an application of state law to a fact pattern which, with some variation, has recurred.  Because of these recurrences, state and federal courts have developed discernible guiding principles in interpreting insurance policies

---

[8] In fact, certification has largely developed as a more efficient alternative to *Pullman* abstention. See, e.g., *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 75 (1997) ("Certification today covers territory once dominated by a deferral device called "Pullman abstention….").

such as the one at issue here. Stated another way, the Court has found ample "research materials at hand" to guide its decision. *Drown* 2010 WL 4939963, at *1 (S.D. Ohio Nov. 30, 2010).

Certification is ultimately committed to a court's discretion. *Transamerica, Ins. Co.,* 50 F.3d at 372.   And, following established guidance on certification, the Court will not exercise its discretion to certify a question to the Supreme Court of Ohio where this Court can discern a "reasonably clear and principled course." *Pennington*, 553 F.3d at 450.

That course has already been laid out, as follows: it is reasonable to interpret an insurance policy to cover the hypothetical sales tax on a new car if the policy can be fairly read to provide the insured with the cost "to replace" or the cost "to buy a comparable vehicle."

For the reasons discussed above, USAA has failed to demonstrate that certification to the Supreme Court of Ohio is warranted.

## V.  MOTION TO SEAL

### A.     Standard of Review

A district court's decision to seal court records is reviewed for an abuse of discretion. *Beauchamp v. Fed. Home Loan Mortg. Corp.*, 658 F. App'x 202, 207 (6th Cir. 2016) (citing *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 306 (6th Cir. 2016)).  However, "the district court's decision is not accorded the deference that standard normally brings."  *Id*. (quoting *Shane Grp.*, 825 F.3d at 306).

There is a "stark" difference between, on the one hand, the propriety of allowing

litigants to exchange documents in secret, and on the other hand, the propriety of

allowing litigants to shield from public view those documents which are ultimately relied

on in the Court's adjudication.  *See Shane Grp.*, 825 F.3d at 305.  Parties are typically

entitled to a "protective order" limiting the disclosure of documents in discovery upon a

mere showing of good cause.  *Id.*  However, "very different considerations apply" when

these materials are filed in the public record.  *Id.* (quoting *Joy v. North*, 692 F.2d 880,

893 (2d Cir. 1982)).

Unlike information merely exchanged between the parties, the public has a strong

interest in obtaining the information contained in the court record.  *Id.*  Accordingly, the

courts have long recognized a "strong presumption in favor of openness" of court

records.  *Id.* (quoting *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1179

(6th Cir. 1983)).

The Sixth Circuit has repeatedly explained that a party moving to seal court

records must overcome a significant burden.  *See Shane Grp.*, 825 F.3d at 305–06;

*Beauchamp*, 658 Fed. App'x at 207–08; *Rudd Equip. Co. v. John Deere Constr. &*

*Forestry Co.*, 834 F.3d 589, 593–96 (6th Cir. 2016).  According to the Sixth Circuit:

> The burden of overcoming that presumption [of openness] is
> borne by the party that seeks to seal them.  The burden is a
> heavy one: Only the most compelling reasons can justify non-
> disclosure of judicial records. …And even where a party can
> show a compelling reason why certain documents or portions
> thereof should be sealed, the seal itself must be narrowly
> tailored to serve that reason. The proponent of sealing therefore
> must analyze in detail, document by document, the propriety
> of secrecy, providing reasons and legal citations.

*Shane Grp.*, 825 F.3d at 305–06 (quotations and citations omitted).

A district court that chooses to seal court records must set forth specific findings and conclusions "which justify nondisclosure to the public." *Id*. (quoting *Brown & Williamson*, 710 F.2d at 1176). A court's failure to set forth reasons explaining why the interests in support of nondisclosure are compelling, why the interests in support of access are less so, and why the seal itself is no broader than necessary is grounds to vacate an order to seal. *Id*.

**B.      Analysis**

In its motion to seal, USAA requests that this Court seal Exhibits B, C, and D (Docs. 50-2, 50-3, 50-4) that were attached in support of Plaintiffs' response in opposition to USAA's motion for judgment on the pleadings. (Doc. 41). USAA contends that these documents are USAA's claims handling guidelines, used internally by adjusters, and contain confidential and proprietary business information. (Docs. 41, 46). USAA also seeks to redact the references to and explanations of these exhibits in Plaintiffs' response in opposition. USAA specifically asks that Plaintiff's response in opposition, Doc. 50, PageID# 1219, lines 7-12 ("For example…settlement"), be redacted. Plaintiffs oppose sealing any records. (Docs. 43, 47).

On careful consideration, the Court concludes that the Motion to Seal should be granted in part. Specifically, the Court finds that (1) USAA's motion to seal Exhibits B, C, and D is granted; and (2) USAA's motion to seal/redact the lines in Plaintiffs' brief

referring to the exhibits (Doc. 50, PageID# 1219, lines 7-12 ("For example …
settlement")) is denied.

First, there is a compelling reason for non-disclosure of Exhibits B, C, and D.
These exhibits are USAA's internal documents, and they contain confidential and
proprietary business information related to USAA's internal processes for determining
the value of insureds' claims. This Court has repeatedly held that companies have a
compelling interest in protecting such information from their competitors—especially
where, as here, disclosure would cause a competitive disadvantage. *See, e.g., Ethicon
Endo-Surgery, Inc. v. Covidien, Inc.*, No. 1:11-CV-871, 2017 WL 4168290, at *2 (S.D.
Ohio Sept. 20, 2017) ("This Court has previously recognized that protecting confidential
information that would otherwise allow competitors an inside look at a company's
business strategies is a compelling reason to restrict public access to filings.").

However, the same cannot be said for USAA's proposed redaction of Plaintiffs'
response in opposition. The text USAA seeks to redact (Doc. 50, PageID# 1219, lines 7-
12 ("For example … settlement") explains the proprietary documents only general[y and
could not possibly betray any trade secrets of substantive value. The parenthetical
descriptions of the exhibits very nearly track the Plaintiff's independent allegations about
the meaning of ACV throughout its argument. Thus, a continued seal is not justified as to
the text of Plaintiffs' response in opposition.

Second, the public's interest in the redacted Exhibits appears to be limited. At this
juncture, it does not appear that the public will need to review the specific contents of
Exhibits B, C, and D to understand Plaintiffs' arguments in opposition to the motion for

judgment on the pleadings. Similarly, the brief parenthetical explanations in Plaintiffs' response in opposition – which the Court leaves unredacted – will provide context to the public. Thus, at this point in the proceedings, the public's interest in the full disclosure of Exhibits B, C, and D appears to be minimal.[9]

Finally, sealing only Exhibits B, C, and D is narrowly tailored. USAA does not seek to seal the entirety of Plaintiffs' response in opposition and supporting exhibits. The content of the exhibits totals four pages of the 763 pages filed by Plaintiffs. The Court is convinced that the seal, applied only to the mentioned exhibits, is narrow enough to balance the competing interests under consideration.

## VI. CONCLUSION

Based upon the foregoing, Defendants' motion for judgment on the pleadings, or alternatively, to certify a question of controlling law to the Supreme Court of Ohio (Doc. 32) is **DENIED**. Defendants' motion to stay discovery (Doc. 32), pending the Court's decision on the motion for judgment, is **DENIED as moot**.

Defendants' motion to seal (Doc. 41) is **GRANTED IN PART**. The Court's order temporarily granting leave to file under seal is **VACATED**. (*See* 2/4/2021 Notation Order).[10] The Clerk is hereby **DIRECTED** to unseal Plaintiffs' response in opposition (Doc. 50) and its corresponding exhibits, except for Exhibits B, C, and D; that

---

[9] Of course, the Court reserves the right to revisit this determination if/as necessary throughout the course of the litigation.

[10] Plaintiffs' initial motion to file under seal to comport with the parties' protective order (Doc. 37) is hereby **TERMINATED as moot**.

is, Exhibit B (Doc. 50-2), Exhibit C (Doc. 50-3), Exhibit D (Doc. 50-4) shall remain

sealed at this time.

**IT IS SO ORDERED.**

Date:    7/13/2021

Timothy S. Black
United States District Judge