## IN THE UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | |
|---|---|
| **SHAUNA CAVALLARO, LATONDRA TRAYLOR, and BERNARD IVORY, individually and on behalf of all others similarly situated,**<br><br>       Plaintiffs,<br><br>v.<br><br>**UNITED SERVICES AUTOMOBILE ASSOCIATION and GARRISON PROPERTY AND CASUALTY INSURANCE COMPANY,**<br><br>       Defendants. | CASE NO.: 1:20-CV-00414-TSB<br><br>JUDGE MATTHEW W. MCFARLAND<br><br>MAGISTRATE JUDGE STEPHANIE K. BOWMAN |

### PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

Plaintiffs Shauna Cavallaro, Latondra Traylor, and Bernard Ivory (Plaintiffs) submit this unopposed Motion and respectfully request that the Court preliminarily approve the proposed class action settlement described in detail in the Class Action Settlement Agreement and exhibits thereto ("Agreement"), attached hereto as Exhibit A and incorporated by reference, between Plaintiffs and Defendants United Services Automobile Association, Garrison Property & Casualty Insurance Company, USAA Casualty Insurance Company, and USAA General Indemnity Company (together, "Defendants" or "USAA").

### I.  <ins>CONCISE STATEMENT OF THE RELIEF REQUESTED</ins>

Plaintiffs file this motion requesting that the Court preliminarily approve a class action settlement, and preliminarily certify a settlement class. Plaintiffs request that the Court grant

preliminary approval of the proposed settlement and enter an order of preliminary approval that includes the content of the proposed order attached as Exhibit 1 to the Agreement.

The proposed preliminary approval order approves the form of notice to be given to the class, establishes a schedule and process for the submission of any objections or requests for exclusion from the class, and provides for a fairness hearing to be held by the Court. The parties will submit a motion requesting final approval of the settlement in advance of the fairness hearing.

## II.       STATEMENT OF THE BASIS FOR THE REQUEST

The Parties reached the Settlement Agreement after approximately twenty-three months of litigation and the Agreement is the product of substantial, contentious negotiations between the parties through mediation facilitated by mediator Mike Ungar. *See* McLaughlin on Class Actions § 6:7 (12th ed.) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion."); *City Partnership Co. v. Atlantic Acquisition Ltd. Partnership*, 100 F.3d 1041, 1043 (1st Cir. 1996) ("When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement.").

The Parties have reached a settlement agreement for the purpose of providing to members of a settlement class cash benefits of $10,250,000.00 for settlement class members who make a valid claim payment of sales tax in the amount of 5.75% of the adjusted vehicle value as calculated during the original total-loss payment, or, if USAA included a partial amount in sales tax, 5.75% of the adjusted vehicle value less the amount in sales tax included in the original payment. If the Class Member possessed Car Replacement Assistance (CRA) coverage, the settlement payment would include an additional 20% in sales tax. For example, consider three different hypothetical claims where the underlying vehicle value is $10,000.00: (i) USAA paid $0.00 in sales tax and the insured did not have CRA coverage; (ii) USAA paid $0.00 in sales tax and the insured possessed

CRA coverage; (iii) USAA paid $200.00 in sales tax and the insured did not possess CRA coverage. The first claimant would receive $575.00, the second claimant would receive $690.00, and the third claimant would receive $375.00. Class members who retained their total-loss vehicle will also receive the salvage title fee of $20.00 as part of the claim payment.

### III.  MEMORANDUM OF LEGAL AUTHORITY

#### a. Litigation and Discovery History

This case involves allegations that Defendant breached automobile insurance policies issued to Plaintiff and members of the proposed class by failing to include in payments for total loss vehicles an amount for sales tax calculated based on the sales tax that would be due upon purchase of a comparable vehicle. Exhibit B ("Phillips Decl.") ¶¶ 3, 10. Defendants' practice and procedure concerning sales tax depended on whether the insured submitted proof of replacement within thirty-three days of the claim. If not, Defendants did not pay any sales tax as part of its total-loss claim payment. If the insured submitted proof of replacement, Defendants would reimburse the incurred sales tax up to the amount that would have been owed on the total-loss vehicle. After this litigation commenced, Defendants changed the practice and began paying sales tax as part of the total-loss payment irrespective of proof of replacement. *Id*. at ¶¶ 20-21, 77.  However, Defendants deny that their decision to change was caused by this litigation.

The aforementioned facts were elicited through discovery conducted during this litigation. Plaintiffs allege that conditioning payment of sales tax on proof of replacement and the failure to pay the full ACV Sales Tax—calculated as the applicable percentage of the underlying total-loss vehicle value—constituted a breach of USAA's form insurance Policy. USAA maintains that its practices and procedures were valid and lawful pursuant to its Policy and Ohio law. During the discovery period and prior to settlement, five depositions were conducted, and Plaintiffs served

multiple rounds of discovery requests, secured and analyzed thousands of documents, including spreadsheets containing millions of data inputs, engaged in extensive briefing of the merits, including multiple dispositive motions, and retained several expert witnesses, including an insurance industry expert and a data analysis expert. Id. at ¶¶ 4-19, 24-27.

### b. The Proposed Settlement

The proposed settlement requires USAA to pay up to $10,250,000.00 in benefits, including payment to all settlement class members who submit valid claims in the amount of 5.75% of the underlying vehicle value, less any amount in sales tax that was included in the original total-loss payment. Agreement at ¶ 86. If the claimant possessed CRA coverage at the time of the total-loss claim, the settlement payment will include the 20% CRA coverage added to the sales tax calculation. *Id*. If the claimant retained their total-loss vehicle, the settlement payment will include the $20.00 salvage title fee if not previously paid. *Id*. USAA has changed its business practice to include ACV Sales Tax without precondition in its total-loss claim, calculated as the applicable state plus local percentage on the adjusted vehicle value of the total-loss vehicle

### 1. Approximately $10.25 Million Monetary Value

The proposed settlement provides for up to $10.25 million in cash benefits. Determining the amount that was paid for sales tax on many of the claims may require a detailed review of the claim file to assess the basis for each payment that was made and what was included in that payment, including cross-referencing one of almost 600 taxing jurisdictions to determine the local surtax that was applicable at the time of loss. The proposed settlement provides for USAA to review the files of class members who make claims in the settlement to make these determinations. The class member will have the opportunity to object to any determination and, if necessary, a neutral evaluator will arbitrate any disagreement. Agreement at ¶¶ 23, 76.

## 2. Likelihood of Success is Uncertain

If the case were to proceed through final judgment in this Court, and then an appeal to the Sixth Circuit, both sides would bear risk—indeed, this Court recently certified its Order denying judgment on the pleadings for interlocutory appeal because this Court found that whether the practice at issue constitutes a breach of contract to be a close call. The putative class would bear the risk of recovering nothing if class certification were denied or reversed on appeal, or if judgment was entered in favor of USAA or a judgment in favor of the class was overturned on appeal. *Id*. at ¶¶ 29-30. Notably, the Sixth Circuit—amongst other courts—recently ruled in favor of an insurance company on a similar claim. *Id*.

## 3. The Settlement Provides for a Limited Release, Robust Notice, and a Simple Claims Process

For the convenience of settlement class members in submitting claims, USAA will extract available information from its claim records concerning the vehicle make, model and year, and the date of loss to pre-fill information on the claim forms. *See* Agreement at Exhibit 3. Notice will be provided via direct mail on two separate occasions, including the pre-filled, postage-prepaid claim form. Additionally, the release is narrowly tailored to the precise claim alleged in this litigation relating to payment of sales tax and title fees without precondition.

This type of settlement structure, under which class members need to submit claim forms if they wish to make a claim for payment in the settlement process, is regularly approved by federal courts. *See, e.g.*, *Bastian v. United Servs. Auto. Ass'n*, 2017 U.S. Dist. LEXIS 180757 (M.D. Fla. Nov. 1, 2017) (approving similar claims-made settlement in class action concerning total-loss vehicles where USAA's internal procedure for payment of sales tax in Florida was materially identical to its procedure in Ohio); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 783 (N.D. Oh. 2010) (approving settlement that required claim submissions to establish entitlement to

settlement proceeds); *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269 (6th Cir. 2016) (affirming a claims-made class action settlement as fair and reasonable); *Poertner v. Gillette Co.*, 618 Fed. Appx. 624, 628 (11th Cir. 2015) (same).

### 4. Attorneys' Fees Are Reasonable

The proposed settlement further provides that class counsel may make an application for attorneys' fees in the Court's discretion, not to exceed $3,000,000.00. Agreement at ¶ 62(e). This constitutes approximately 22.9% of the settlement value, which is well within the Sixth Circuit's benchmark for attorneys' fees. *Kis v. Covelli Enters.*, 2020 U.S. Dist. LEXIS 93929, at *17, n.75 (N.D. Oh. May 29, 2020) (approving fee award of 30% and citing cases that note the typical range of class action attorneys' fees is 20-30% of settlement value). This amount equates to Class Counsel's lodestar, utilizing rates recently approved for each timekeeper in recent litigation, with a 1.8 multiplier. Phillips Decl. at ¶¶ 39-41. This is also comfortably within the range courts consistently find reasonable in class litigation. *See generally Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 517 (6th Cir. 1993) (approving 2.0 multiplier); *Bower v. MetLife, Inc.*, 2012 U.S. Dist. LEXIS 149117, at *23-24 (S.D. Oh. Oct. 17, 2012) (collecting cases demonstrating that multipliers ranging from 1.75 to 5.0 are considered reasonable in class litigation). As such, and as Plaintiffs will more fully demonstrate in the forthcoming fee petition, the attorneys' fees amount is reasonable whether this Court uses the "percentage-of-the-fund" approach or the lodestar approach.

### c. Class Certification Is Warranted

Plaintiffs submit that certification of the proposed Settlement Class is appropriate. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is

that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Respectfully, this Court should conclude that it is likely to certify the Settlement Class and approve the Settlement as fair, adequate, and reasonable. *See* Rule 23(e)(1). Certification will allow Notice to issue to Settlement Class members of the Settlement; of their right to be heard on its fairness; of their right to opt-out or object; and of the Final Approval Hearing. *See* Manual for Compl. Lit., §§ 21.632, 21.633. USAA does not oppose certification for settlement purposes.[1] Each of the Fed. R. Civ. P. 23(a) and (b)(3) requirements are satisfied here for the Settlement Class, defined as:

> All Defendants' insureds who submitted a Covered Total Loss Claim and who received a Total Loss Claim Payment from Defendants but did not receive (1) Sales Tax and were not subsequently paid Sales Tax during the Class Period; (2) CRA Sales Tax for those of whom possessed CRA Coverage on the Total Loss Date and were not subsequently paid CRA Sales Tax during the Class Period; and (3) Salvage Title Fees for those of whom retained title to their Total Loss and were not subsequently paid Salvage Title Fees during the Class Period.

-Agreement at ¶ 54.

The numerosity requirement is satisfied for purposes of settlement because deposition testimony and extensive spreadsheet data produced during discovery demonstrates that there are more than 13,000 class members during the relevant period who had total-loss auto claims in Ohio and who were not fully paid ACV Sales Tax. Phillips Decl. at ¶ 43. This easily satisfies the numerosity requirement. *See generally Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006) (explaining that "while there is no strict numerical test, substantial numbers usually satisfy the numerosity requirement").

---

[1] Although Defendants do not oppose certification of the Settlement class, and have agreed to settle the Settlement Class claims as set forth herein, Defendants do not agree with Plaintiff's interpretation of Rule 23, and this Agreement does not constitute a waiver of any defenses USAA has opposing certification of a litigation class if the proposed Agreement is not approved.

Rule 23(a)(2) requires a plaintiff to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The claims must depend on a common contention of which "its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *see also Sprague v. GMC*, 133 F.3d 388, 397 (6th Cir. 1998) (to satisfy commonality there "need only be one issue common to the class"). Here, the commonality requirement is satisfied because there is a common question of law concerning whether USAA's standard and uniform Policy promise to pay the actual cash value of total-loss vehicles includes ACV Sales Tax without precondition. This issue applies to all claims of the proposed Settlement Class and every Settlement Class member, and its resolution – whether in further litigation or on appeal – would resolve an issue central, indeed dispositive, to every class member claim. Phillips Decl. at ¶ 44.

Rule 23(a)(3) requires that the class representative's claim(s) be typical of the claims of the Settlement Class. Fed. R. Civ. P. 23(a)(3). Typicality is established where the plaintiff's claim "arises from the same event or practice or course of conduct [as class members]" and are "based on the same legal theory." *Am. Med. Sys.*, 75 F.3d at 1079. In other words, "as goes the claim of the named plaintiff"—favorably or unfavorably—"so go the claims of the class." *Sprague*, 133 F.3d at 399; *see also Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561-562 (6th Cir. 2007) (typicality met where representative's claim was premised on the same injury as class members). Here, the typicality requirement is satisfied because Plaintiffs' claims based on precisely the same legal theory and "pattern or practice" as every Class Member: that ACV includes ACV Sales Tax without precondition of actual replacement, and USAA's "pattern or practice" of conditioning payment of sales tax on proof of replacement and on the amount of sales tax incurred. Phillips

Decl. at ¶ 45. Further, Plaintiff's claim is typical of the Class Members because Plaintiffs and every Class member were insured under form Policies containing materially identical language.

Rule 23(a)(4) requires that "the representative parties ... fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This involves two criteria: "1) the representative must have common interests with unnamed [class] members…and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Young*, 693 F.3d at 543. The court should "review[] the adequacy of class representation to determine whether class counsel are qualified, experienced and generally able to conduct the litigation." *Id*. Class Counsel's declaration demonstrates that Plaintiffs adequately performed their duties as class representative. Phillips Decl. at ¶¶ 47-49. There is no evidence Plaintiffs possess interests in conflict with the Proposed Class. *Id*. The declaration also demonstrates that Class counsel competently represented the proposed class to date and are qualified to represent the settlement class. *Id*. at ¶¶ 50-71. Further, Class Counsel has litigated several other similar class actions with successful results and have been appointed Class Counsel by numerous courts. *Id*.

Rule 23 requires a finding that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).[2] Predominance is established where "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole…predominate over those issues that are subject only to individualized proof." *Beattie*, 511 F.3d at 564. An absence of individual issues is not necessary. *See Young*, 693 F.3d at 544. Notably, courts routinely find

---

[2] Defendants do not agree with Plaintiffs' arguments regarding predominance and superiority, and this Agreement does not constitute a waiver of any defenses USAA has opposing certification of a litigation class.

predominance in cases involving interpretation of uniform contract terms. *E.g.*, *Zehentbauer Family Land, LP v. Chesapeake Expl., L.L.C.*, 935 F.3d 496, 506 (6th Cir. 2019) ("Breach of contract claims arising out of a standardized, form contract ordinarily are suitable for class certification…"). Here, the common question—where USAA's form Policy requires payment of ACV Sales Tax without precondition—predominates over any individual question. Essentially the only "individual" question, such as it is, concerns the amount of damages to which Class Members are entitled, which does not preclude a finding of predominance. *Brown v. Electrolux Home Products, Inc.*, 817 F. 3d 1225, 1239 (11th Cir. 2016) (noting the "black-letter rule" that individual questions of damages do not predominate over common questions of liability).

As to the superiority factor, "cases alleging a single course of wrongful conduct are particularly well-suited to class certification." *Young*, 693 F.3d at 545. To determine if class-wide adjudication is proper, courts consider: (A) the interest in individually controlling prosecution; (B) whether other litigation has commenced; (C) the desirability of concentrating litigation; and (D) manageability. *Beattie*, 511 F.3d at 564. Here, common issues are central to the litigation and the individual damages, on average, are less than $700.00 per class member, which easily satisfies the first prong of the superiority analysis. *See generally Chapman v. Tristar Prods.*, No. 1:16-CV-1114, 2017 U.S. Dist. LEXIS 61767, at *16 (N.D. Oh. Apr. 24, 2017) ("The most compelling rationale for finding superiority in a class action is the existence of a negative value suit, which is where the costs of enforcement in an individual action would exceed the expected individual recovery") (cleaned up). The remaining prongs also favor class treatment: no action was "already commenced" by any member of the class, it is desirable and efficient to concentrate class members' identical claims in this forum, and Plaintiffs are unaware of any difficulties in the management of this action. Phillips Decl. at ¶ 46.

For these reasons, certification of the Settlement Class is appropriate.

### d. Preliminary Approval Is Warranted

There is a strong federal policy "favoring settlement of class actions." *UAW v. General Motors Corp.*, 497 F.3d 615, 633 (6th Cir. 2007). Preliminary approval—which simply permits Notice of the settlement to be provided to the Class—is a relatively limited inquiry where the court's role is to "evaluate whether the proposed settlement appears to be the product of serious, informed, non-collusive negotiation, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Hyland v. HomeServices of Am., Inc.*, No. 3:05-CV-612, 2012 U.S. Dist. LEXIS 4818, at *2 (W.D. Ky. Jan. 17, 2012) (cleaned up). These requirements are readily satisfied here, as demonstrated above and in the exhibits hereto.

As will be set forth in greater detail in the Motion for Final Approval, the Fed. R. Civ. P. 23(e) factors all favor approval. *See generally Cook v. Gov't Emples. Ins. Co.*, No. 6:17-cv-891-ORL-40KRS, 2020 U.S. Dist. LEXIS 111956, at *16-17 (M.D. Fla. Jun. 22, 2020) (explaining that Rule 23 was amended to add textual factors relevant to approval of class action settlements, which was intended to focus litigants and courts on the "core concerns" of Rule 23, but not to displace the relevant factors prescribed by appellate courts). The factors outlined in *UAW*, 497 F.3d at 631—which remain relevant to the analysis, particularly to the extent they do not overlap with the Rule 23(e) textual factors—also favor approval.

### 1. The Rule 23 Threshold Factors Favor Approval

Fed. R. Civ. P. 23(e)(2) contains two threshold or procedural requirements: adequate representation and arms-length negotiations. Both favor preliminary approval of the proposed Settlement.

The adequate representation analysis under Rule 23(e) "is distinct from Rule 23(a)(4) and is meant to address whether the class representatives possessed sufficient information and knowledge of the claims, issues, and defenses prior to negotiating and settling the claims." *Cook*, 2020 U.S. Dist. LEXIS 111956, at *18. This overlaps with one of the *UAW* factors, i.e., "the amount of discovery engaged in by the parties[.]" 497 F.3d at 631. Here, Plaintiffs engaged in nearly two years of litigation and had concluded almost all of discovery prior to reaching settlement. Phillips Decl. at ¶ 26. Plaintiffs served multiple rounds of discovery requests, secured and analyzed thousands of documents, including spreadsheets containing millions of data inputs, engaged in extensive briefing of the merits, including multiple dispositive motions, and retained several expert witnesses. *Id*. at ¶¶ 23-25. This litigation also included six depositions, and, at the time of settlement, Plaintiffs had finished their brief in support of class certification. Moreover, the undersigned have litigated numerous similar class actions, including against USAA, and have detailed knowledge about the strengths and weaknesses of the claims, as well as USAA's data systems, practices, and procedures. *Id*. at ¶¶ 26, 54, 56-57, 59, 66, 69. The Rule 23 adequate representation factor and the *UAW* "amount of discovery" factor both clearly favor preliminary approval. *See generally Satterly v. Airstream, Inc.*, 2020 U.S. Dist. LEXIS 210868, at *16-17 (S.D. Oh. Sep. 25, 2020) (that plaintiffs had "exchanged written discovery and relevant information, engaged in further independent investigation, confirmed damages calculations with a third-party expert, and conducted additional legal research regarding the claims and defenses in the lawsuits" militated in favor of approving a class settlement).

Additionally, settlement was reached only with the assistance of Michael Ungar, an experienced and well-respected mediator. Exh. C (Decl. of Mediator Michael Ungar). The negotiations were unquestionably conducted as arms' length. Moreover, this Court has witnessed

firsthand the extensive and hard-fought litigation between the Parties prior to settlement. Thus, the Rule 23 "arms' length" and the *UAW* "lack of fraud or collusion" factor both weigh in favor of preliminary approval. *See generally Bert v. AK Steel Corp.*, No. 1:02-CV-467, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008) ("The participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties"); *Diaz v. Hillsborough County Hosp. Auth.*, 2000 U.S. Dist. LEXIS 14061, at *15-16 (M.D. Fla. Aug. 7, 2000) (years of contested litigation prior to settlement demonstrates lack of collusion).

### 2.    The Rule 23 Substantive Factors Favor Approval

Fed. R. Civ. P. 23(e)(2)(C)-(D) prescribe the factors relevant to determining whether a proposed Settlement is substantively adequate: the costs and risk of trial and appeal, the method of claim distribution, the terms of attorneys' fees, and whether class members are treated equitably vis a vi each other.

Plaintiffs believe the Agreement is beneficial to the Class for several reasons, as can be seen between a comparison of the likelihood of ultimate success and the relief secured through the settlement.[3] *See In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 2016 U.S. Dist. LEXIS 130467, at *47-50 (N.D. Oh. Sep. 23, 2016) (analyzing the fairness of a proposed settlement by comparing the benefits provided by the settlement to the damages potentially available at trial in light of the odds of success); *see generally In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984) ("The most important of the factors to be considered

---

[3] Comparing the benefits secured through settlement with the benefits potentially available at trial divided by the chances of success is consistent both with Fed. R. Civ. P. 23(e)(2)(C)(i) and with two *UAW* factors, i.e., "the complexity, expense and likely duration of the litigation and the likelihood of success on the merits." 497 F.3d at 631 (cleaned up).

in reviewing a settlement is the probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured."). Although Plaintiffs intend to explicate why the settlement is beneficial to the class in greater detail when moving for final approval, Plaintiffs briefly note that as set forth above, the likelihood of success is uncertain. The Sixth Circuit recently ruled against the insured alleging a similar theory, as did the Fifth and Seventh Circuits. The Seventh Circuit in particular adopted the argument USAA made in this litigation, i.e., that the minimum regulatory requirements imposed by the state govern the relevant rights and obligations, albeit under Illinois, not Ohio, law. Plaintiffs disagree with these decisions, and this Court rejected the Seventh Circuit's reasoning—but this Court also posited that the question was a close enough call to merit interlocutory review. Phillips Decl. at ¶¶ 28-31. Clearly, continuing litigation and appeal presents significant risk.

Given this risk—and even absent it—the value of the settlement is significant and impressive. First, the Settlement provides damages in the amount of approximately 80% of the amount that could have been secured at a litigated judgment if Plaintiffs prevailed entirely on the claim.[4] Phillips Decl. at ¶¶ 34-35. This is far higher than settlements courts have found to be fair and reasonable. *In re Polyurethane Foam Antitrust Litig.*, 2015 U.S. Dist. LEXIS 23482, at *5 (N.D. Ohio Feb. 26, 2015) ("A settlement figure that equates to roughly 18 percent of the best-case-scenario classwide overcharges is an impressive result in view of these possible trial outcomes."); *Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*, 2005 U.S. Dist. LEXIS

---

[4] The Agreement provides for payment of sales tax in the amount of 5.75% of the adjusted vehicle value, which is the rate set by the State of Ohio during the Class Period. Plaintiffs also alleged that local surtax is a part of ACV Sales Tax—which can range in the amount of 0-2.25%. Taking into account the local surtax, the average overall sales tax rate in Ohio is approximately 7.22%. Thus, by securing benefits of sales tax in the amount of 5.75%, Plaintiffs secured, conservatively, approximately 80% of the damages that could have been awarded at trial.

9705, at *9 (E.D. Pa. May 19, 2005) (11.4% of damages). Additionally, the Notice to which the Parties agree is robust and comprehensive. Phillips Decl. at ¶ 36. Defendant agreed to send individual Notice by direct mail (including provisions to ensure any class member who changed addresses is located) on two separate occasions, thus providing significant assurance that Class Members will receive Notice. *See Braynen v. Nationstar Mortg.*, LLC, 2015 U.S. Dist. LEXIS 151744, at *56 (S.D. Fla. Nov. 9, 2015) (robust notice plan is evidence terms of settlement are fair and reasonable).

Second, the "method of processing class-member claims" is simplicity itself: The Claim form is pre-filled, postage pre-paid, and Class Members must simply attest to the information and send the Claim form back (or, if necessary, update their address). Agreement at ¶¶ 66, 71-72, Exhibit 3; *see Wilson v. EverBank*, 2016 U.S. Dist. LEXIS 15751, at *32-33 (S.D. Fla. Feb. 3, 2016) (finding significant that class members need not submit any additional evidence or documentation beyond merely "checking a box" which "should take no more than a few minutes for the average claimant to complete."). Moreover, Class Members will be provided a ClaimantID that can be used to access a pre-filled electronic claim, requiring merely an electronic attestation and clicking a "Submit Claim" button. *Id.*[5]

Third, the terms of the attorneys' fees award weigh in favor of approval of the proposed Settlement. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii). The analysis here is "distinct from the Rule 23(h)"

---

[5] In a recent case, the proposed settlement required class members to fill into the claim form their "address and contact information, the location of the Sonic location where they made their purchase, and the last four digits of the payment card number they used to make the purchase and whether the fraud occurred before February 28, 2018 (if applicable)." *In re Sonic Corp. Customer Data Sec. Breach Litig.*, 2019 U.S. Dist. LEXIS 135573, at *15 (N.D. Oh. Aug. 12, 2019). Even this process was considered simple enough to militate in favor of settlement. Here, the proposed Settlement contemplates a far simpler process, where class members merely attest to pre-filled information on a postage-prepaid (or electronic) claim.

analysis, which addresses whether the attorneys' fees amount is reasonable on its own terms, and "instead addresses if and how the attorneys' fees impacted the terms of the Settlement." *Cook*, 2020 U.S. Dist. LEXIS 111956, at \*24. Here, the attorneys' fees amount did not impact the substantive Settlement terms at all—indeed, the parties did not even discuss attorneys' fees until after all other Settlement terms were finalized. Ungar Decl. at ¶¶ 7. As such, Rule 23(e)(2)(C)(iii) favors approval of the proposed Settlement.

Finally, class members are clearly treated equitably, in that they will receive the same Notice, the same claim process, are agreeing to precisely the same release, and are entitled to the same benefits: the state sales tax calculated as a percentage of their vehicle's underlying value.[6]

As such, all the Rule 23(e)(2)(C)-(D) factors militate in favor of approval.

### 3. The Remaining *UAW* Factors Favor Approval

The *UAW* factors that are independent of the Rule 23 factors—i.e., the opinions of class counsel and the public interest, *see* 497 F.3d at 631—also support approval of the proposed Agreement.[7] Class Counsel possess extensive knowledge of USAA's procedures and data systems, as well as the relative strengths and weaknesses of the underlying claim, and it is their reasoned judgment that the proposed Settlement is in the best interests of the Class. Phillips Decl. at ¶¶ 72-76; *see also Brent v. Midland Funding, LLC*, 2011 U.S. Dist. LEXIS 98763, at \*49-50 (N.D. Oh. Sep. 1, 2011) ("The Court gives great weight to the recommendation of experienced counsel for

---

[6] While the Settlement provides for the Named Plaintiffs to petition for a Service Award, courts generally analyze Service Awards standing alone, and not within the rubric of Fed. R. Civ. P. 23(e)(2)(D). *See, e.g.*, *In re Sonic Corp.*, 2019 U.S. Dist. LEXIS 135573, at \*16-18 (analyzing Service Awards separately from Rule 23(e)(2)(D)). Whether the proposed Service Awards are reasonable will be addressed in the forthcoming fee petition.

[7] The final factor is the response from the Class, but of course that factor is irrelevant until the Hearing on Final Approval, after Notice is provided and Class Members are given the opportunity to object.

the parties in evaluating the adequacy of the settlement."). Moreover, "settlement fosters the goals of certainty, finality and economy, which lie at the heart of our general preference for settlement of class actions." *Berry v. School Dist.*, 184 F.R.D. 93, 106 (W.D. Mich. 1998). And because of the valuable compensatory relief secured and the beneficial change in business practice, the proposed Settlement "does its best to ensure that Defendants can continue to provide valuable service to Class Members in an atmosphere that will foster trust and confidence." *In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 372 (S.D. Oh. 1990).

For the reasons set forth herein, all the factors outlined in Rule 23(e) and in *UAW* militate in favor of preliminary approval of the proposed Settlement.

### 4. The Claims-Made Structure Does Not Undermine Approval

The settlement includes a claims-made structure, which does not impact the "fairness, reasonableness, or adequacy of proposed settlement." *Hamilton v. SunTrust Mortg. Inc.*, 2014 U.S. Dist. LEXIS 154762, at *18 (S.D. Fla. Oct. 24, 2014). USAA made clear it would not settle the claim absent the claims-made structure. Agreement at ¶ 117. And as courts have explained, whether a settlement compares favorably to a hypothetical settlement to which the parties did not agree is irrelevant. *See, e.g., Casey v. Citibank, N.A.*, 2014 U.S. Dist. LEXIS 156553, at *6 (N.D. N.Y. Aug. 21, 2014) (while direct payment may have resulted in more class members receiving some payment, "there is no reason to believe the defendants would agree to such terms" and thus the feasibility of direct payment "is irrelevant") (citing *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 986 (7th Cir. 2002) (because the inquiry into a proposed settlement structure "is limited to whether the settlement is lawful, fair, reasonable and adequate[,] . . . [an objector] must do more than just argue that she would have preferred a different settlement structure")); *Montoya v. PNC Bank, N.A.*, 2016 U.S. Dist. LEXIS 50315, at *49 (S.D. Fla. Apr. 13, 2016)

(claims-made settlement offered the best and "only real relief" possible in settlement because defendants "would not have agreed" to direct-pay structure). The question is not whether a claims-made settlement compares favorably to a hypothetical, non-existent settlement, but rather whether the Settlement is fair and reasonable on its own terms. *See Casey*, 2014 U.S. Dist. LEXIS 156553 ("The Court does not have the authority to impose a preferred payment structure upon the settling parties").

The Agreement removes the risk that the class will recover nothing due to an unfavorable ruling on class certification, summary judgment, or any appeal therefrom. Despite removing such risk, far from accepting a significant reduction in the potential damages, the Agreement provides approximately 80% of the total damages that could have been recovered at trial. For all such reasons, and as will be more fully explained in the Motion for Final Approval, Plaintiffs believe the Agreement is fair and reasonable to the Class.

Finally, for the convenience of the Court, below is a proposed preliminary schedule outlining the dates set forth in the Settlement Agreement, which comports with the Schedule outlined in the proposed Order preliminarily approving of the proposed Settlement, which is affixed as Exhibit 1 to the Settlement Agreement.

## PROPOSED PRELIMINARY SCHEDULE

| # | Action | Deadline |
|---|--------|----------|
| 1 | Website Notice Posted by Settlement Administrator | Thirty (30) days after the Court enters a Preliminary Approval Order ("PAO") |
| 2 | Deadline for Settlement Administrator to mail out direct mail notice | Forty-five (45) days after entry of the PAO |
| 3 | Deadline for Settlement Class Members to opt-out of the Agreement | Thirty (30) days after Notice Date (seventy-five (75) days after entry of the PAO) |

| 4 | Deadline for submission of Notice of Intent to object to agreement | Thirty (30) days after Notice Date (seventy-five (75) days after entry of the PAO) |
| 5 | Deadline for Settlement Class Members to file claims. | Thirty (30) days after Final Approval is entered |
| 6 | Deadline for Class Counsel to file their Motion for Final Approval of the Settlement, application for attorneys' fees, costs and expenses, and for a service award for Plaintiff. | Fifteen (15) days after expiration of the deadlines to request exclusion or file Notice of Intent to object to agreement (90 days after entry of PAO) |
| 7 | Deadline for Settlement Administrator to file proof of completion of Notice, along with complete and accurate Opt-Out list | Ten (10) days before Final Hearing |
| 8 | Final Approval Hearing | At least 105 days after entry of PAO (fifteen (15) days after deadline for Class Counsel to file the Motion for Final Approval) |

## CONCLUSION

Plaintiff respectfully requests that the Court grant preliminary approval of the proposed settlement (attached as Exhibit A), and enter an order of preliminary approval that includes the content of the proposed order attached as Exhibit 1 to the Agreement. The proposed preliminary approval order approves the form of notice to be given to the class, establishes a schedule and process for the submission of any objections or requests for exclusion from the class, and provides for a fairness hearing to be held by the Court. Plaintiff anticipates later requesting final approval of the settlement in advance of the fairness hearing.

Dated: June 20, 2022                    Respectfully submitted,

                                        */s/ Jake Phillips*
                                        Jacob L. Phillips (admitted *pro hac vice*)

Edmund A. Normand (admitted *pro hac vice*)
**NORMAND PLLC**
Post Office Box 1400036
Orlando, FL 32814-0036
Tel: (407) 603-6031
jacob.phillips@normandpllc.com
ed@ednormand.com

**EDELSBERG LAW, PA**
Scott Edelsberg, Esq. (admitted *pro hac vice*)
scott@edelsberglaw.com
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
Telephone: (305) 975-3320

**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis (admitted *pro hac vice*)
Christopher Gold (admitted *pro hac vice*)
efilings@shamisgentile.com
chris@edelsberglaw.com
14 NE 1st Ave., Suite 705
Miami, FL 33132
Telephone (305) 479-2299
Facsimile (786) 623-0915

**DAPEER LAW, P.A.**
Rachel Dapeer (pro hac vice to be filed)
rachel@dapeer.com
300 S. Biscayne Blvd, #2704
Miami, FL 33131
Telephone: 305-610-5223

**SPANGENBERG SHIBLEY & LIBER**
STUART E. SCOTT (0064834)
sscott@spanglaw.com
KEVIN C. HULICK (0093921)
khulick@spanglaw.com
1001 Lakeside Avenue East, Suite 1700
Cleveland, Ohio 44114
(216) 696-3232
(216) 696-3924 (FAX)

***Attorneys for Plaintiffs & the Proposed Class***

20

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 20th day of June, 2022, a copy of the foregoing has been electronically filed with the Clerk of the Court using the CM/ECF system, which will cause a notice of electronic filing to be served on all counsel of record.


*/s/ Jake Phillips*
Jacob L. Phillips (admitted *pro hac vice*)
Attorney for Plaintiffs